## No. 10,969.

### KINSELLE v. THE PEOPLE.

Decided June 2, 1924. Rehearing denied July 7, 1924.

Plaintiff in error was convicted of being an accessory to the crime of rape.

### *Affirmed.*

### *On Application for Supersedeas.*

1. APPEAL AND ERROR—*Rape—Sufficiency of Evidence.* Evidence reviewed and held sufficient to support a conviction of being accessory to the crime of rape.

2. CRIMINAL LAW—*Rape—Instructions.* Under the facts disclosed in a prosecution for rape and instructions of the court to the effect that to constitute the crime there must be the utmost reluctance and resistance on the part of the complaining female, or that her will must be overcome so as to preclude resistance, a requested instruction that if she made no outcry the presumption would be that no rape was committed, held properly refused.

3. INSTRUCTIONS—*No Evidence.* A requested instruction not justified by the evidence is properly refused.

4. CRIMINAL LAW—*Rape—Character of Prosecutrix.* In a prosecution for rape, an instruction to the effect that the bad character of the female, if there be such, is no answer to the charge of rape, held proper.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. CHARLES H. SMALL, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. RILEY R. CLOUD, Assistant, for the people.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE plaintiff in error, defendant below, and so designated here, was convicted of being an accessory to the crime of rape and sentenced to a term of 15 to 18 years in the penitentiary. He brings the case here for review and moves for a supersedeas. The information charges that W. R. Lambert and Tony Herrian did forcibly, and against her will, feloniously and carnally know Marie Will, and that Thomas Kinselle was there present at the commission of the crime, and did aid, abet, assist, advise and encourage Lambert and Herrian in the commission of the crime.

The evidence shows that on February 17, 1923, Mrs. Will, a married woman 16 years of age, was living with her husband at the Harvey Hotel, in Denver. There was evidence also that about 10 o'clock that evening, as Mrs. Will stepped out of the elevator on the third floor, she was accosted by the defendant; that he followed her to her room and tried to enter but she pushed him out and locked the door; a half hour later, while telling her husband what defendant had done, defendant returned with Williamson, who at first claimed to be the proprietor of the hotel, and later, a federal officer, while defendant represented himself to be a Post reporter, but later said that he was a detective; that they accused Will and his wife of not being married and of living together in an adulterous relation; that defendant then threatened to have them arrested and said he would call the police patrol and take them down; that they then left the room and the Wills retired about 11 o'clock; that later, defendant returned to the Wills' room bringing with him Lambert, whom they said was also an officer, and Kinselle asked that Lambert arrest the Wills; that after making some investigation and a search of their room, Lambert and defendant both left; that shortly afterward the defendant again returned to the Wills' room with Herrian who also claimed to be an officer, and displayed a badge; that defendant again insisted on the arrest of the Wills.

Finally they compelled Mrs. Will to get up and dress, refusing to leave the room while she did so, and to go into the

hall, ostensibly to use the telephone to call her mother. Kinselle remained in the room sitting on Will's clothes, Mr. Will being in bed, while Mrs. Will went with Herrian down the hall in the direction of the telephone. When they got in front of the door to Lambert's room, Herrian and Lambert forced her into the room, locked the door and kept her there for about one-half hour; while there she claims they had sexual intercourse with her, forcibly and against her will. Mrs. Will then returned to her own room crying, and about two hours later informed her husband what had transpired in the Lambert room. During the evening all the parties had been drinking intoxicating liquor to some extent, but defendant was very much under its influence. Immediately after Mrs. Will returned to her room, the defendant at the call of Herrian left and did not return.

The alleged errors discussed in defendant's brief are:

(1) Error in overruling defendant's motion for directed verdict. (2) Error in refusing to give instruction No. 11 requested by defendant. (3) Error in refusing to give requested instructions Nos. 5 and 8. (4) Error in giving to the jury instruction No. 10.

These alleged errors we will consider in their order.

1. We have examined, with much care, the entire evidence in this case and we are of the opinion that it was ample to justify the jury in finding that Lambert and Herrian had sexual intercourse with Mrs. Will, forcibly and against her will, as charged in the information, and also sufficient to justify the finding that defendant was an accessory to the commission of the crime. It is difficult to believe otherwise. The crime was a most brutal and dastardly one. These men had represented themselves to be officers of the law. The conclusion is irresistible that by intimidation and threats they forced this 16 year old girl into submission and rendered her powerless to resist. The defendant took these men there after having himself attempted to enter Mrs. Will's room. He remained in the room with her husband, sitting on Will's clothing, and telling him to remain there until Mrs. Will and the men re-

turned. After Mrs. Will returned to her room and Herrian called to defendant to come out, he left and did not return. Each of the three men, Williamson, Lambert and Herrian, as they were brought into the Wills' room by defendant, was requested by defendant to arrest the Wills for the reason, as he claimed, that they were not married. From the fact that each of these men, almost as soon as he entered the room, claimed to be an officer, and threatened to arrest the Wills, it is quite clear that defendant had, prior to entering the room, informed them that the Wills were not married, and had arranged with them to arrest the Wills or threaten their arrest. There could not be clearer or more convincing evidence, that defendant was an accessory to the crime, than the record discloses in this case. It is claimed, however, that defendant was so intoxicated that he was not responsible for what he did. We think the evidence discloses that he was not intoxicated to such an extent but that he knew what he was doing; otherwise he could not have arranged, as he evidently did, for the presence of the men there, and for what followed in the Wills' room.

The defendant did not testify in his own behalf; Lambert and Herrian fled and have not since been apprehended. Except as to what occurred in Lambert's room, Mrs. Will is corroborated by the testimony of her husband and other evidence in the case. It is evident that, in these circumstances, there could be no corroboration of Mrs. Will, as to what occurred in Lambert's room, nor is it essential that there should be.

The court properly overruled the motion for a directed verdict.

2. The court did not err in refusing to give instruction No. 11 requested by defendant. That instruction is as follows: "The court instructs the jury that if you believe from the evidence that at the time of the alleged rape other people were at the same time in the same hotel and in adjoining rooms, who might easily have heard her had she made any outcry, and that she, in fact, made no outcry at

the time the defendants, Tony Herrian and W. R. Lambert, were having alleged carnal knowledge of her, these facts will tend to raise a presumption that no rape was committed upon her at the time."

We think it was unnecessary to give this instruction. The court, by instruction No. 6, told the jury that to constitute the crime of rape there must be the utmost reluctance and resistance on the part of the female complaining, or her will must be overcome by force and terror so extreme as to preclude resistance. In view of the evidence, the instruction was properly refused. The evidence clearly shows that she made no outcry at the time and explains why she did not, a matter not taken into consideration in the instruction.

3. The court did not err in refusing to give instructions Nos. 5 and 8 requested by defendant. Mrs. Will's testimony was so fully corroborated, that the refusal to give these requested instructions could not have resulted in any prejudice to the defendant. Furthermore, requested instruction No. 8, was to the effect that should the jury believe from the evidence that Mrs. Will had sexual intercourse with other men and boys before the time in question, the jury might look to said acts of lewdness not only for the purposes of shedding light upon the credibility or standing of Mrs. Will, but also as an aid to the jury in determining whether the intercourse was by force or consent. That instruction should not have been given, for the reason that there was no evidence showing that Mrs. Will had had, previous to that occasion, intercourse with other men and boys. There was some evidence from which it might be inferred that Mrs. Will was not a woman of good moral character, but there was nothing in the evidence that would justify the giving of that instruction. The jury had before it whatever evidence there was as to the immoral character of Mrs. Will, and doubtless exercised its right to consider all this evidence as affecting her credibility and there was no necessity for the giving of requested instruction No. 5. It was properly refused also because not justified by the

evidence. There was no evidence that the general reputation of Mrs. Will for chastity was bad.

4. Finally, complaint is made that the court erred in giving to the jury instruction No. 10, which reads: "If you find from the evidence beyond a reasonable doubt that the defendant Thomas Kinselle committed the crime of rape upon Marie Will as an accessory, as that crime is defined in these instructions, you will return a verdict of guilty, even though you should further believe from the evidence that at the time such crime was committed Marie Will was a woman of bad character; for the bad character of the female, if such there be, is no answer to the charge of rape, if such charge be otherwise proven."

We think this instruction is not open to the criticism directed against it, that is, that its effect could be only to mislead and confuse the jurors as to the extent to which they might consider the character of the prosecutrix. The instruction was proper and the court did not err in giving it.

Finding no error in the record, the supersedeas is denied and the judgment affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE CAMPBELL concur.